## 61314. BENNETT v. THE STATE.

CARLEY, Judge.

Appellant was indicted for possession with intent to distribute more than one ounce of marijuana resins in violation of the Georgia Controlled Substances Act. After an original plea of guilty was withdrawn, appellant was tried and the jury returned a verdict of guilty. Judgment was entered on the verdict and appellant was sentenced to ten years, three years to serve and seven years on probation. He appeals.

1. Appellant enumerates as error the denial of his motion for directed verdict at the close of the state's evidence. The evidence for the state adduced at trial was as follows: After receiving information that appellant had "hash oil" to sell, a GBI agent arranged a meeting with appellant through the informant. On August 24, 1978, at the appointed time and place two GBI agents and the informant met with appellant. The purchase of hash oil was discussed. Appellant and one of the agents left and returned with a bottle which appellant asserted contained the contraband. Appellant was paid the agreed price, counted the money and was arrested. The bottle was delivered to the State Crime Laboratory where analysis demonstrated the substance contained therein consisted of some 4.3 ounces of tetrahydrocannabinol that "most likely [was] not synthetic" and "would be considered marijuana resins." This evidence clearly did not demand a verdict of "not guilty" of possession of marijuana resins. There is no merit to arguments that the motion for directed verdict of acquittal was erroneously denied because there was a fatal variance between the allegation in the indictment that appellant possessed marijuana resins and proof at trial that he possessed Schedule I tetrahydrocannabinol within the meaning of former Code Ann. § 79A-806(d)(16) (Ga. L. 1974, pp. 221,231). Compare *Aycock v. State,* 146 Ga. App. 489 (246 SE2d 489) (1978). There was no fatal variance and the motion was not erroneously denied on that ground. *Byers v. State,* 236 Ga. 599 (225 SE2d 26) (1976).

After his motion for directed verdict was denied, appellant presented his defense of entrapment. Citing *Harpe v. State,* 134 Ga.

App. 493 (214 SE2d 738) (1975), *Hall v. State,* 136 Ga. App. 622 (222 SE2d 140) (1975), and other cases too numerous to mention, appellant argues that the evidence of his entrapment demands an acquittal and that the guilty verdict cannot stand. We do not agree. We have reviewed the transcript and find that appellant's evidence that he was entrapped consists of no more than his testimony that he had never before been involved with drugs and that the government informer made repeated requests for drugs. "Because the phrase 'undue persuasion' is used in context with 'incitement or deceitful means,' [in Code Ann. § 26-905] it must mean something more than repeated requests for contraband drugs knowingly owned and possessed by one who at first demurs to the disposition of his drugs." *Garrett v. State,* 133 Ga. App. 564, 566 (211 SE2d 584) (1974). "The focus of the entrapment defense is the intent or predisposition of the defendant to commit the crime. [Cits.]" *Johnson v. State,* 147 Ga. App. 92, 93 (248 SE2d 168) (1978). Appellant's testimony that he had never before been involved in and was therefore presumably not predisposed toward drug transactions was rebutted by testimony that "showed him to be a person extremely knowledgeable in the drug trade who was eager to make sales and who had multiple sources of supply." *Taylor v. State,* 149 Ga. App. 362, 363 (254 SE2d 432) (1979). Compare, e.g., *Robinson v. State,* 145 Ga. App. 17 (243 SE2d 257) (1978). "[W]here the state produces rebuttal to the testimony of the apellant, it is not essential for the informer to testify. [Cit.]" *Chambers v. State,* 154 Ga. App. 620, 625 (269 SE2d 42) (1980). Thus, appellant's testimony negating his intent or predisposition to commit the crime charged was not unrebutted and the evidence authorized the submission of the entrapment defense to the jury. *Causey v. State,* 154 Ga. App. 76, 80 (4) (267 SE2d 475) (1980). The jury was instructed as to the defense of entrapment and there is evidence to support their verdict. *Smith v. State,* 239 Ga. 477, 480 (1) (238 SE2d 116) (1977). It was within the province of the jury to believe the state's witnesses and to disbelieve appellant. *Taylor v. State,* 149 Ga. App. 362, supra.

2. There are four terms of the Superior Court of Clayton County beginning on the first Monday of February, May, August and November. Appellant was indicted and filed his demand for speedy trial pursuant to Code Ann. § 27-1901 during the November 1978 term. During the next succeeding term, that of February 1979, appellant pled guilty after expressly acknowledging that such action on his part would result in a waiver of trial by a jury. A pre-sentence investigation was ordered and the sentence hearing, originally scheduled for the May 1979 term, was continued until the August 1979 term. Apparently at or before this sentence hearing appellant

decided to withdraw his guilty plea and, on August 10, 1979, formally did so and demanded a jury trial. Appellant's case was called on January 30, 1980, during the next term of court, the November 1979 term. At that time both appellant and the state moved to continue the case and the trial court granted the request. Also on January 30, 1980, appellant moved to be discharged and acquitted because more than two terms of court had passed since he had made his demand for a speedy trial during the November 1978 term. The trial court denied appellant's motion and his subsequent trial and conviction occurred during the February 1980 term. Appellant enumerates as error the denial of his motion for discharge and acquittal under Code Ann. § 27-1901.

We have no difficulty in holding that appellant waived his right to rely on his demand for a speedy trial when he voluntarily entered his plea of guilty during the February 1979 term. "A waiver of the demand would result from a continuance granted on the motion of the accused, or from any other act on his part showing affirmatively that he consented to passing the case until a subsequent term." *Walker v. State,* 89 Ga. 482 (15 SE 553) (1892). The only question, therefore, is what effect the subsequent withdrawal by appellant of his guilty plea and the filing of his demand for jury trial had on appellant's right to insist that he be tried within a definite period or be discharged. The issue is whether appellant's subsequent withdrawal of his guilty plea and his demand for a jury trial "revived" his previously filed demand for speedy trial and, if so, whether his demand was met in this regard.

We find no precedent which presents the exact factual and procedural circumstances which exist in the instant case. In *Gordon v. State,* 106 Ga. 121 (2) (32 SE 32) (1898) it was held: "If, at a term when a demand for trial is operative, a trial be had which results in a verdict of guilty, and a new trial be granted at the term, the failure of the accused to then move for a discharge will not affect his rights under the demand. *It will stand over to be complied with at the next term."* (Emphasis supplied.) While there is admitted dicta to the contrary in *Clay v. State,* 4 Ga. App. 142, 146 (60 SE 1028) (1908), we are prepared to assume for the limited purpose of the instant appeal only that *Gordon* stands for the proposition that when an otherwise "guilty" defendant who has filed a demand for a speedy trial successfully takes action to negate the determination of guilt, the demand "will stand over to be complied with at the next term." Applying this analysis to the instant case, appellant withdrew his guilty plea during the August 1979 term and would in fact have been tried during the "next term," the November 1979 term, had he not moved to continue the case. This was a waiver of any right appellant

may have had under a "revived" demand to be tried no later than the November 1979 term. *Walker v. State,* 89 Ga. 482, supra. It is thus clear that absent appellant's own voluntary actions at every stage of the case he would have been tried at a term of court which would have been in compliance with his demand for a speedy trial. We find no error.

Furthermore, if appellant's demand for a jury trial filed in conjunction with the withdrawal of his guilty plea in the August 1979 term is itself construed as a demand for a speedy trial under Code Ann. § 27-1901 (*Wallis v. State,* 154 Ga. App. 764 (270 SE2d 45) (1980)), it was, in effect, a waiver of any and all rights he may have had to rely upon his original demand for a speedy trial and his right to be acquitted must stand or fall upon the state's compliance with the demand filed on August 10, 1979. *Huckeba v. State,* 157 Ga. App. 795 (1981). Again, under this analysis appellant would have been tried during the "next succeeding regular term" following the filing of this demand had he not agreed to continue the case to another term by joining in the motion for continuance when his trial was called on January 30, 1980. Thus pretermitting any argument that appellant's original demand for a speedy trial was "revived" when he withdrew his guilty plea, the record demonstrates that he was tried in full compliance with the demand filed during the August 1979 term.

3. The trial court properly overruled appellant's motion to strike testimony and evidence concerning statements made by the informant to the investigating officer. "Code § 38-302 provides that, 'When, in a legal investigation, information, conversations, letters and replies, and similar evidence are facts to explain conduct and ascertain motives, they shall be admitted in evidence, not as hearsay, but as original evidence.' [Cit.]" *English v. State,* 234 Ga. 602, 605 (216 SE2d 851) (1975). The contested evidence in the instant case was admitted for this limited purpose and the jury was so instructed. See *Morris v. State,* 228 Ga. 39 (8) (184 SE2d 82) (1971). There was no error. Compare *Harrell v. State,* 241 Ga. 181 (243 SE2d 890) (1978).

4. At trial appellant requested access to a written report of the investigating officer and predicated this request on Code Ann. § 40-2701 et seq. which provides for the inspection of public records. Appellant enumerates as error the denial of this motion. A motion to produce under Code Ann. § 38-801 (g) and § 38-802 is the proper vehicle through which a defendant in a criminal case compels the state to produce at trial certain materials in its possession. *Brown v. State,* 238 Ga. 98 (231 SE2d 65) (1976). While appellant had filed a motion to produce in this case, even assuming that it was "revived" by the withdrawal of his guilty plea, the transcript demonstrates that at trial he placed his reliance upon Code Ann. § 40-2701 et seq. and not

Code Ann. §§ 38-801 (g) and 38-802 for the right of access to the officer's report. Compare *Phillips v. State,* 146 Ga. App. 423 (246 SE2d 438) (1978). Furthermore, even had appellant invoked his motion to produce, such a motion would have been properly denied. "Reports and summaries made by police investigators are not the types of 'books, writings or other documents or tangible things' subject to a 'notice to produce.' [Cit.]" *Carter v. State,* 150 Ga. App. 119 (257 SE2d 11) (1979).

Appellant also urges that pursuant to his original Brady motion he was entitled to an in camera inspection of the officer's report. Again, even assuming that appellant's original Brady motion was "revived" by the withdrawal of his guilty plea, the transcript demonstrates that appellant did not invoke Brady when he requested an "in camera hearing" on the matter but relied solely on the erroneous argument that he was entitled to nonprivileged material under the terms of Code Ann. § 40-2701 et seq. Compare *Phillips v. State,* 146 Ga. App. 423, supra. There was no error for any reason urged on appeal.

5. Appellant urges that he was denied access to a certain laboratory report to which he was entitled under this motion to produce and his Brady motion. Even assuming that appellant's original motions were viable after he entered and then subsequently withdrew a guilty plea, we find no error. The existence of the purported lab report which appellant urges was erroneously suppressed by the state was discovered in the following manner: The state called as its witness a special agent with the Drug Enforcement Administration of the United States Department of Justice to rebut appellant's contention that he was not predisposed to commit drug violations and had never before been involved with drug transactions. This federal agent testified that, previous to the sale of hash oil for which appellant was being tried, he had had a meeting with appellant. At that meeting, they "discussed a sample of cocaine that [appellant] had given [an informant] on a previous occasion . . ." and the appellant confirmed that he had supplied the cocaine. The agent further testified that "we discussed the sale of an amount of hashish or hash oil that [appellant] alleged he could have imported here through a consulate or embassy located in Atlanta from South America into this country." On cross-examination defense counsel questioned the federal agent concerning the alleged sample of cocaine supplied to the informant. During that cross-examination the agent testified: "There is a crime lab, a [Drug Enforcement Administration] laboratory analysis on that sample available. I don't have it, but there is one." It is this laboratory analysis report that appellant contends was erroneously denied him by the state.

It is clear that a failure to produce a lab report not in the possession of state authorities is not subject to a motion to produce. See *Gibson v. State,* 150 Ga. App. 718 (2) (258 SE2d 537) (1979). The purported lab report on the cocaine sample was presumably in the possession of federal Drug Enforcement Administration authorities, not the state. Furthermore, while appellant urges that the lab report was material to his defense because there was no probative evidence the sample was in fact cocaine, this argument totally ignores the fact that the federal agent's testimony was offered not to demonstrate that appellant had sold cocaine but merely to show that appellant was predisposed to engage in drug transactions. Appellant's predisposition to commit violations of the drug law was shown by the agent's *testimony* that appellant confirmed he had supplied the informant with "cocaine" and had a source for the importation of hash oil and hashish into this country. The officer's testimony could only be impeached by showing that appellant had not confirmed he supplied cocaine to the informant or discussed his overseas drug connections. It could not be impeached with regard to its relevancy to the issue of appellant's predisposition to violate the drug law by showing that the substance was other than "cocaine." Therefore, under these facts a lab report confirming or negating that appellant had in fact violated the drug laws by supplying cocaine would not be material to appellant's entrapment defense as impeaching the testimony that appellant was *predisposed* to violate the drug laws. Since the federal agent's testimony was offered to show only appellant's predisposition to engage in the drug traffic and not to show appellant made a specific "cocaine" transaction, the lab report on the substance supplied to the informant was not material to his defense under the Brady doctrine. See generally *Holton v. State,* 243 Ga. 312, 315 (253 SE2d 736) (1979).

6. It was not error to allow the state to call the federal agent in rebuttal even though his name did not appear on the list of witnesses furnished to appellant. " 'Calling an unlisted witness in rebuttal is not error. [Cits.]' [Cit.]" *Mize v. State,* 240 Ga. 197, 199 (6) (240 SE2d 11) (1977).

7. Appellant urges that the trial court's charge and recharge to the jury on the issue of entrapment was erroneous. Suffice it to say that when the entire charge on this issue is read together, including that portion attacked by appellant as erroneous, it was a full, fair, accurate instruction on the issue and not error for any reason urged. See generally *Rucker v. State,* 135 Ga. App. 468, 471 (3) (218 SE2d 146) (1975).

8. At the close of the evidence the prosecutor made his opening argument to the jury. Defense counsel then presented his argument

for appellant. The prosecutor then began his concluding argument and in the course thereof "read law from the appellate decisions of this State to the Court in the presence of the jury and argued the applicability of those appellate excerpts." Defense counsel objected, contending that reading excerpts from appellate decisions and arguing their applicability was authorized only in opening, not closing, argument. Though defense counsel was given no notice that the prosecutor would read from appellate decisions in his closing argument or of what those decisions would be, his objection was overruled. Defense counsel then moved at the conclusion of the state's closing argument for additional time to respond to those excerpts read by the prosecutor. This motion was denied. Appellant enumerates as error both the overruling of his objection to the prosecutor's reading from appellate decisions in his closing argument and the denial of his motion to respond thereto.

The decisive case on this issue is *Hill v. State,* 73 Ga. App. 293, 303 (36 SE2d 191) (1945) where it was held: " 'While the party who is entitled to the concluding argument should be required to state to his adversary, before he addresses the jury, the questions of law that he will make in the case, and read or present to him the authorities which he expects to use, . . . *the refusal of the court to require the party, before he concludes the argument, to state his points of law, or authorities in support thereof, is no ground for a new trial. The proper practice would be to ask leave to reply to questions of law not presented except in the concluding argument.' "* (Emphasis supplied.) Thus, while it was not error for the trial court to overrule the objection to the prosecutor's reading of appellate decisions in his closing argument, it was error for the trial court to deny defense counsel's motion for leave to respond to those points of law which had not been raised until closing argument.

We find unpersuasive the state's argument that the error was harmless under the "highly probable test." See generally *Porter v. State,* 148 Ga. App. 505, 508 (7) (251 SE2d 574) (1978). If the prosecutor considered the appellate decisions from which he read important enough to the state's case to read them to the court in the presence of the jury, he should have done so in his opening argument, or given defense counsel notice of the decisions he would read in closing, or, failing this, the trial court should have granted the motion of defense counsel seeking the opportunity to respond to the prosecutor's argument in this regard. In the instant case it is undisputed that the prosecutor chose to follow neither of the first two options and, consequently, we must hold that it was reversible error for the trial court to deny appellant the third.

9. Appellant contends that the original sentence that *would*

*have been imposed* had he not withdrawn his guilty plea *before it was pronounced* was more lenient than the sentence he received after being tried. Citing North Carolina v. Pearce, 395 U. S. 711 (89 SC 2072, 23 LE2d 656) (1969), appellant urges that in the absence of an affirmative statement in the record by the court of the reasons underlying the decision to increase the punishment it was error to impose the "harsher" sentence after trial. See *Anthony v. Hopper,* 235 Ga. 336 (219 SE2d 413) (1975). Since appellant's conviction must be reversed for the reasons discussed in Division 8 above, the question of "vindictiveness" in appellant's sentencing is a moot issue. However, because appellant may be retried, reconvicted and resentenced, we are compelled to address the applicability of Pearce as it relates to appellant's situation.

Pearce has no applicability under the facts presented *in the instant appeal.* The holding in Pearce addresses the issue of "constitutional limitations . . . upon the general power of a judge to impose upon *reconviction* a longer prison sentence than the defendant *originally received."* (Emphasis supplied.) North Carolina v. Pearce, 395 U. S. at 719, supra. Under the construction of Code Ann. § 27-1404 applicable at all times relevant to the instant case, *State v. Germany,* 246 Ga. 455 (1) (271 SE2d 851) (1980), appellant withdrew his guilty plea as a matter of right before any sentence was "pronounced." Compare *Pope v. State,* 142 Ga. App. 24 (234 SE2d 829) (1977); *Thompson v. State,* 154 Ga. App. 704 (269 SE2d 474) (1980). Thus, there was no original sentence "imposed" pursuant to appellant's guilty plea and, therefore, no basis from which appellant can urge that the sentence he received after trial was "harsher." As we interpret Pearce, the issue of "vindictive" sentencing arises only in the case where, after a successful attack on the original conviction and subsequent reconviction, a defendant receives a more severe sentence than was *originally imposed.* See generally *Anthony v. Hopper,* 235 Ga. 336, supra. "We can envision no beneficial effect on the administration of the criminal justice system resulting from an interpretation of Pearce whereby those accused of crimes who [would otherwise] receive less harsh sentences engendered by pleas of guilty [could thereby] establish the maximum punishment to be imposed and then withdraw those pleas and force the state to trial with nothing to lose." *Thompson v. State,* 154 Ga. App. 704, 709-710, supra. If appellant is retried, reconvicted and then receives a harsher sentence than the one imposed after the conviction that is today reversed, Pearce would *then* be applicable so as to require the trial judge to specify for the record the reasons for the imposition of such harsher sentence.

10. Remaining enumerations of error not specifically addressed

have been considered and are found to be without merit.
*Judgment reversed. Deen, P. J., and Banke, J., concur.*

DECIDED MAY 1, 1981 —

*Clarence L. Leathers, Jr.,* for appellant.
*Robert E. Keller, District Attorney, Harold G. Benefield, Assistant District Attorney,* for appellee.