70188, 70189. PENNYMAN v. THE STATE (two cases).
(333 SE2d 659)

BEASLEY, Judge.

These appeals are taken from the conviction of two defendants of violating the Georgia Controlled Substances Act by selling nearly 100 pounds of marijuana to an undercover agent.

Each defendant enumerates different errors, but the factual background and transaction which gave rise to each one's indictment and conviction are the same. The witnesses for the state related the following.

Undercover GBI agent Slay obtained information about George Pennyman from a confidential informant, a prisoner who knew George well. To obtain an entree with George, the informant was temporarily released in February 1983 and introduced George to Slay, who thereafter took control of the conversation and sought to purchase 100 pounds of marijuana from George. George related that he had sold 100 pounds the day before, and that although he grew marijuana he had none available but Slay should "get back with him" in November or December.

On January 8, 1984, Slay again obtained the informant's release for a re-introduction. Again they met, with Slay reiterating that he wanted to purchase 100 pounds of marijuana. The parties negotiated and agreed to a deal at $450 per pound as set by George. Slay was to come back during the week to finalize the transaction. On January 19, Slay returned with Arthur, another undercover agent, but did not find George at home. Instead, Obie Pennyman was there. He related that George had gone hunting, that George was expecting Slay; that "the package" was ready but that it would be 99 pounds and not 100 as originally agreed. He further told Slay that "you don't have to wait for" George to return; "we can do the deal now." Slay declined and said he would return the following day, which he did, wearing a "body bug" and accompanied by several agents concealed in a van driven by Arthur.

After some delay, George and Obie arrived; the Pennymans and Slay went into the Pennyman residence. George announced he had made a prior sale for $500 per pound and was tempted to sell the amount he had for Slay. It was agreed that Slay could inspect the marijuana first and that George could count the cash ($44,550) before loading the van. Slay asked "how many was there" and Obie responded 99 pounds. After viewing the marijuana Slay and George carried some of it to the van where George began to count the money.

The agents exited the van, arrested him, and arrested Obie inside the house.

George testified that he and "Joe" (the name he gave for the individual who introduced Slay to him) had been friends for over 8 years; that he had obtained marijuana for "Joe" on a couple of occasions; that "Joe" was the only other one for whom he obtained marijuana; that "Joe" had visited him in July 1983 and introduced Slay as a friend under the name of "B"; that "Joe" had sought marijuana from him but he had none and did not know where any could be obtained. "B" did not participate in the conversation, he said. He further testified that on January 8, 1984, "Joe" returned with "B" and stated "B" was his "running man"; that "Joe" asked for 100 pounds of marijuana to which he responded he would check around; that the next day "B" returned and George stated that except for his friendship with "Joe" the marijuana would have been gone since he had received higher offers. He admitted carrying several bags of marijuana out to the van and being arrested there.

Obie testified that on January 19 he saw the person who had been introduced as "B" at the family residence; that he was asked about George's whereabouts and after he responded was asked if George had "the package" and that he said he did not know; that the following day Obie told "B" to wait in the house until George returned and when George arrived he did not go into the house with George and "B" but came in later. Obie testified he stayed by the fireplace and did not participate in the conversation between George and "B" which was carried on at the other end of the house. He said he saw George and "B" carrying bags but did not know what they contained.

*Case No. 70188*

1. (a) George argues that the greater weight of evidence establishes that he was entrapped into the commission of the crime.

Our appellate courts do not pass upon the weight of the evidence, but only on whether there is any evidence to sustain the verdict. *Drake v. State*, 241 Ga. 583, 585 (1) (247 SE2d 57) (1978); *McBowman v. Merry*, 104 Ga. App. 454, 456 (1) (122 SE2d 136) (1961). The trial court alone has authority to grant a new trial on the ground that the verdict is strongly and decidedly against the weight of the evidence. *Josey v. State*, 197 Ga. 82, 93 (28 SE2d 290) (1943).

We are required by *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979), to ascertain whether, viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Assuming that George's argument raises this issue, we test

the evidence adduced, by the *Jackson* requirements.

George's counsel concedes that the use of an informant to introduce an undercover agent to the accused, who then carries on the transaction with the agent, does not constitute entrapment. *Sprague v. State*, 147 Ga. App. 347 (1) (248 SE2d 711) (1978). However, he argues that the state's evidence introduced to show that this is basically what transpired is incredible and unworthy of belief.

"The defense of entrapment is applicable when the accused has been induced 'by undue persuasion, incitement, or deceitful means' to commit the act, which he otherwise would not have committed." *McDonald v. State*, 156 Ga. App. 143, 147 (4) (273 SE2d 881) (1980); OCGA § 16-3-25. Entrapment does not exist where an accused who is ready to commit an offense is merely furnished an opportunity to do so. "Even repeated requests and offers of money do not make out an entrapment situation as a matter of law." *Paras v. State*, 247 Ga. 75, 77 (2) (274 SE2d 451) (1981). See *Murrell v. State*, 166 Ga. App. 526 (1) (304 SE2d 408) (1983). Here the state's evidence shows that defendant was merely provided an opportunity to commit the offense.

The jury is the arbiter not only of the credibility of the witnesses (OCGA § 24-9-80) but also of the effect and weight of the evidence, *Butler v. State*, 235 Ga. 95 (218 SE2d 835) (1975), which here did not fall into the category of incredible, impossible or inherently improbable. The jury was free to accept or reject either the state's version or that of the defendant. The state's version was sufficient for a rational trier of fact to find the defendant guilty of the crime charged beyond a reasonable doubt. See *Meade v. State*, 165 Ga. App. 556 (301 SE2d 912) (1983).

(b) George also urges as error 1) the failure to give his specific written request to charge on entrapment and 2) the summary instruction given in conclusion by the trial court, which instruction made no reference to entrapment.

First, the instructions to the jury, taken as a whole, contained a thorough and detailed discussion on the principles of law applicable to entrapment. It is not necessary to include the exact language of written requests to charge when the same principles are given in the general charge. *Shirley v. State*, 245 Ga. 616, 619 (3) (266 SE2d 218) (1980). Second, here the instructions on entrapment immediately preceded the summary instruction. Therefore, there is no basis to conclude that the summary, by not expressly mentioning entrapment again, would mislead or confuse the jury into convicting based purely on whether they found the allegations of the indictment sustained by sufficient proof.

The enumerations of error covered by this argument are without merit.

2. George argues that the trial court erred in restricting cross-

examination of the undercover agent aimed at identifying the confidential informant. He contends that the informant was not a mere tipster but was an actual participant in the drug transaction.

The state's evidence indicates that the informer served the sole function of providing an introduction for the agent to George and did not participate thereafter in the arrangements. The defendant disputed this and testified he dealt primarily with the informant whom he knew well and for a long time.

"Where a person merely takes an undercover agent to a location and identifies or introduces the agent to a seller of drugs, with all arrangements for the sale being wholly made by the agent, even if the sale is witnessed by the introducer, such introducer is nothing more than an informer and acts as a tipster only and not as a decoy so as to require a disclosure of name, address or similar information." *Gilmore v. State*, 168 Ga. App. 76, 77 (308 SE2d 232) (1983). Based on the testimony of the state's witness the trial court was authorized to find the informant was a tipster. *Carter v. State*, 165 Ga. App. 427 (301 SE2d 658) (1983).

Even if the informant was not a tipster, it still was not error to refuse to permit questions regarding his identity; the record clearly shows that defendant was well aware of the identity of the person he now complains he was prevented from discovering. *Moore v. State*, 158 Ga. App. 342 (1) (280 SE2d 170) (1981); *Ford v. State*, 160 Ga. App. 707, 708 (2) (288 SE2d 39) (1981).

## Case No. 70189

1. Obie contends, as did George, that the verdict is contrary to the weight of the evidence and that the evidence fails to show his guilt beyond a reasonable doubt.

Applying the test of *Jackson v. Virginia*, 443 U. S. 307, supra, we find that, although conflicting and lacking the degree of certitude shown in the state's case against George, the evidence was sufficient when construed in favor of the verdict rendered to sustain a finding of guilt beyond a reasonable doubt, by a rational trier of fact.

2. During the voir dire defense counsel asked if any member of the panel holds a view or believes policemen always tell the truth. There being no response, he then asked, "May I presume, by your answer, that members of the jury panel recognize that policemen are human beings, like the rest of us, and sometimes do not tell the truth?" The prosecutor's objection was sustained, and Obie claims error.

The second question was basically repetitious and somewhat argumentative. There was no error in sustaining the objection to it. "The conduct of voir dire is within the discretion of the trial court,

and [its] rulings are proper absent some manifest abuse of [its] discretion." *Gatlin v. State*, 236 Ga. 707 (2) (225 SE2d 224) (1976).

3. It is contended that the court erred in instructing the jury on conspiracy when defendant was not so charged and there was no evidence in that regard.

It is unnecessary for a defendant to be indicted for conspiracy in order to justify a charge on that subject. *Simpkins v. State*, 149 Ga. App. 763, 768 (3) (256 SE2d 63) (1979). The essential element of conspiracy is a "common design or purpose between two or more persons to commit an unlawful act." A meeting or formal agreement need not be shown. *Causey v. State*, 154 Ga. App. 76, 78 (1) (267 SE2d 475) (1980). "It is sufficient that two or more persons in any manner either positively or tacitly come to a mutual understanding that they will accomplish the unlawful design." *Walden v. State*, 121 Ga. App. 142, 144 (1) (173 SE2d 110) (1970). The existence of a conspiracy may be shown by circumstantial evidence. As stated in *Stroud v. State*, 154 Ga. App. 852 (2) (270 SE2d 69) (1980), the corrupt "agreement may be established by direct proof, *or by inference, as a deduction from acts and conduct*, which discloses a common design . . . to act together for the accomplishment of the unlawful purpose."

The evidence authorized the trial judge's charge on the principles of conspiracy.

4. During the course of the prosecuting attorney's opening statement, defense counsel objected "to the State's remarks in opening statement pointed to a person who has been convicted of the charge and connecting Obie Pennyman with that person and pointing to someone who has been convicted by a jury in this case. We think that is highly improper and prejudicial, and we would —" The court interjected, "Well, I don't know what we're talking about. Did Mr. Caldwell point at Mr. Pennyman? Is that what you're fussing about?" Counsel responded, "Yes. Yes. He pointed directly at him and said —" The court then directed the prosecuting attorney "don't point at him," and received an obedient acknowledgement. Defense counsel them moved for a mistrial, which the court overruled and again instructed the prosecuting attorney: "Just don't point at him any more," to which the prosecutor again replied, "Yes, Your Honor."

Obie contends the trial judge erred in failing to grant his motion for mistrial.

"It is well settled that absent a showing of the context in which alleged prejudicial remarks were made this court cannot determine whether remarks were prejudicial to the defendant and thus whether error was committed." *Smith v. State*, 130 Ga. App. 434, 435 (2) (203 SE2d 626) (1973). Accord *Jackson v. State*, 229 Ga. 191, 192 (2) (190 SE2d 530) (1972) (vacated on another ground *Jackson v. Georgia*, 409 U. S. 1122 (93 SC 944, 35 LE2d 254) (1973)). Where the record does

not disclose the offending comment or action, "[t]he objection made is not proof of the factual grounds there stated." *Moore v. State*, 129 Ga. App. 612, 613 (2) (200 SE2d 320) (1973).

Here all we have in the record is defense counsel's characterization of what the prosecuting attorney said and did, and that is disputed. There is no verbatim account as to the actual words used, although we gather that in their course he pointed at George who was sitting in the gallery, having been convicted the day before. We cannot guess at what he said when he pointed. Thus, there is no basis to rule on the enumeration of error and no basis for reversal. *Allen v. State*, 235 Ga. 709, 716 (221 SE2d 405) (1975); *McDaniel v. State*, 248 Ga. 494 (1) (283 SE2d 862) (1981).

*Judgments affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JULY 10, 1985.

*Thomas M. Jackson*, for appellants.

*Johnnie L. Caldwell, Jr., District Attorney, Paschal A. English, Jr., J. David Fowler, Christopher Edwards, Assistant District Attorneys*, for appellee.