## A96A1164. HARALSON v. THE STATE.
(479 SE2d 115)

ANDREWS, Judge.

Joseph Haralson appeals the judgment entered on a jury verdict finding him guilty of one count of violation of the Georgia Controlled Substances Act. We affirm the judgment of the trial court.

The evidence at trial, viewed in the light most favorable to the jury's verdict, was that Officer Bartik, a Gwinnett County police officer in the narcotics unit, working through a confidential informant, set up a meeting with Haralson to buy ten pounds of marijuana. Debra Lane, the confidential informant, was a friend of Haralson's from their high school days, and she asked Haralson to get ten pounds of marijuana to sell to a man who was coming into town from Savannah. According to Haralson's testimony, Lane wanted ten pounds for the person coming from Savannah and one pound for her to sell herself. Bartik's initial contact with Haralson was on the evening of June 15, 1994, when they spoke on the phone and arranged the sale for later that night. After agreeing to meet Haralson at a bar called Rudy's, Bartik arranged for a cover team to accompany him to the meeting.

The two met in the parking lot at Rudy's, and Bartik showed Haralson the $15,000 in cash. Bartik asked Haralson if they were going to do the deal there in the parking lot, and Haralson said no, that it would be across the street at the car wash. Haralson said he was waiting for two other men who would return in a few minutes. While waiting for the men, Bartik testified that he asked Haralson about "doing business in the future together," and Haralson said that would not be a problem. Bartik said he told Haralson he needed to get a better price in future deals, and Haralson told him if he bought a larger amount, the price would come down.

After waiting several minutes, Haralson told Bartik it was time to go over to the car wash. At the car wash, they went up to a pickup truck with two men in it, co-defendants Bowman and Hill. In the pickup truck was a red cooler with several ziplock plastic bags inside.[1] After seeing the plastic bags, Bartik gave the signal to the cover team to arrest Haralson, Hill, and Bowman. After placing Haralson under arrest, Bartik searched him and found a nine-milli-

---

[1] Upon examination, the bags were found to contain ten pounds and seven ounces of a green leafy material which tested positive for marijuana.

meter gun under his shirt, tucked in the front of his pants.

Bartik testified that he never attempted to entice Haralson to do anything against his will and that at no time during the phone conversation or at the scene of the marijuana sale did Haralson appear to be unwilling to engage in the deal.

In his defense, Haralson called two character witnesses, his mother and his uncle. Haralson's mother testified that Debbie Lane would call Haralson "three, four, five times a week or maybe more." Haralson's mother stated that she never found any evidence of drugs in his room when she cleaned. Haralson also called a witness who testified that the nine-millimeter Ruger Haralson was carrying when he was arrested was won by Haralson at a raffle.

Haralson testified in his own defense. He stated he knew Debra Lane from high school and that approximately two months before his arrest, Lane started calling him, telling him her children were doing without and she needed money. Haralson said she asked him to get her some marijuana to sell. He said that at first he tried to avoid her calls, but decided to help Lane after she told him that some men were coming from out of town and she was afraid of them because a "deal" had fallen through and they were angry.

Haralson stated that prior to the calls from Lane, he was not "messing with anything," nor was he "selling any marijuana at the time. . . ." Haralson testified that he was not going to make any money from the deal. He said Lane told him she was going to give him "a little something for [his] trouble." In his search for the marijuana, Haralson said he called several people before talking to Bowman, an old school friend, who in turn called Billy Joe Hill, who provided the marijuana.

When asked about the gun he was carrying when he was arrested, Haralson said the subject of a gun came up in a three-way phone conversation with Lane and Bartik as they were arranging the sale. Bartik told Haralson he was afraid of being mugged, and Haralson said he could use his gun if he wanted to. Haralson said Debra Lane told him he should bring a gun to the sale for his own protection.

The State called Denver Bowman as a rebuttal witness. Bowman testified that when he told Haralson the price of the marijuana, Haralson commented that it "sounded kind of high." Bowman said Haralson told him that he (Haralson) would be getting a pound of marijuana out of the deal.

The jury convicted Haralson on one count of possession with intent to distribute marijuana and acquitted him on the count of possession of a firearm during the commission of a felony. The court sentenced Haralson to ten years intensive probation and fined him $8,000.

1. Haralson's sole defense at trial was that Debra Lane, the confidential informant, entrapped him into committing the crime. In his first enumeration of error, Haralson argues the State failed to rebut his defense of entrapment beyond a reasonable doubt. OCGA § 16-3-25 provides: "A person is not guilty of a crime if, by entrapment, his conduct is induced or solicited by a government officer or employee, or agent of either, for the purpose of obtaining evidence to be used in prosecuting the person for commission of the crime. Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer."

The entrapment defense has three elements: (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement or deceit; and (3) the defendant must not be predisposed to commit the crime. *Keaton v. State*, 253 Ga. 70, 71-72 (316 SE2d 452) (1984). "After a defendant presents a prima facie case of entrapment, the burden is on the state to disprove entrapment beyond a reasonable doubt. That determination generally rests with the jury; however, where there is no conflict in the evidence, and all the evidence prior to the entrapment that is introduced, with all reasonable deductions and inferences, demands a verdict of acquittal, the trial judge must direct a verdict of acquittal. The government's burden is far greater than merely impeaching the accused, it 'must go further and contradict this witness' testimony as to the affirmative defense.' " (Citations omitted.) *Hill v. State*, 261 Ga. 377 (405 SE2d 258) (1991).

In the instant case, the State had an audio tape and a videotape of the marijuana sale. From Haralson's conversation with Bartik at the sale, the jury could correctly infer that Haralson had prior, independent experience in the sale of marijuana. This evidence of familiarity with marijuana transactions can be used to show the defendant's predisposition to commit the crime. *Bennett v. State*, 158 Ga. App. 421, 422 (280 SE2d 429) (1981); *Chambers v. State*, 154 Ga. App. 620, 625 (269 SE2d 42) (1980).

Haralson claims Lane's repeated requests eventually played on his sympathy and induced him to set up the deal. But, this, without more, does not constitute entrapment. *Paras v. State*, 247 Ga. 75, 77 (274 SE2d 451) (1981); *Pennyman v. State*, 175 Ga. App. 405, 407 (333 SE2d 659) (1985).

In discussing the entrapment defense in situations where the government has offered a defendant the opportunity to buy or sell drugs, the United States Supreme Court stated: "the entrapment defense is of little use because the ready commission of the criminal

act amply demonstrates the defendant's predisposition." *Jacobson v. United States*, 503 U. S. 540 (112 SC 1535, 118 LE2d 174, 185) (1992). Here, we find that Haralson readily committed the criminal act and this, together with his conversation with Bartik showing his familiarity with the process of buying and selling marijuana, was sufficient to show Haralson's predisposition to engage in the selling of marijuana. Accordingly, we hold the State submitted sufficient evidence to meet its burden of disproving entrapment beyond a reasonable doubt. See *Rutledge v. State*, 218 Ga. App. 130, 133 (460 SE2d 551) (1995); *Hall v. State*, 211 Ga. App. 310, 311 (439 SE2d 67) (1993).

2. Second, Haralson claims the verdict was contrary to law and violated his rights to due process and fundamental fairness because of the jury's conviction on Count 1 and acquittal on Count 2. During their deliberations, the jury sent a note to the court asking: "If we find entrapment does defendant automatically get acquitted on both counts?" The court answered: "Yes." Haralson argues that since his only defense was entrapment and the jury was specifically instructed that if they found entrapment, Haralson would "automatically get acquitted on both counts," the verdicts are inconsistent and mutually exclusive.

While agreeing that the inconsistent verdict rule has been abolished, Haralson argues that the verdicts are not only inconsistent but mutually exclusive. We disagree. As the State points out, the evidence at trial of entrapment as to possession of a firearm was different from the evidence of entrapment for possession with intent to distribute marijuana. Haralson described a three-way conversation with Lane, the confidential informant, and Bartik, in which Lane urged him to carry a gun that night. The jury could well have believed Haralson was entrapped under those circumstances but not have believed his defense of entrapment with regard to the sale of marijuana. The verdicts are not mutually exclusive.

3. Next, Haralson claims the trial court erred in expressing its opinion on the testimony of rebuttal witness Denver Bowman. The court was concerned over what appeared to be Bowman's inconsistent testimony as to whether or not Haralson told Bowman he was being paid for the deal. Bowman initially testified on direct as follows: "Q. Did he tell you anything about wanting any of the marijuana? A. Yes. Q. What did he tell you? A. He said he was going to get a pound for doing it, instead of getting paid money or whatever."

On cross-examination, when asked "isn't it true that Mr. Haralson told you that the extra pound was going to Debra Lane and she was going to use the money," Bowman replied, "I don't recall." On redirect, the prosecutor attempted to clarify Bowman's testimony, and defense counsel objected, stating that the question had been asked

and answered. The judge ruled he would allow the question because he was concerned by "the inconsistencies the Court has heard from this witness." The court then reminded the witness that he was under oath.

We find no merit to this enumeration. The witness's testimony was contradictory, and the trial judge has the right to question witnesses "for the purpose of developing fully the truth of the case. . . ." (Citation and punctuation omitted.) *Harris v. State*, 202 Ga. App. 618, 619 (414 SE2d 919) (1992).

In addition, the harm, if any, was remedied by the court's instruction to the jury: "[b]y no ruling or comment which the Court has made during the progress of the trial has the court intended to express any opinion upon the facts of this case, upon the credibility of the witnesses, upon the evidence, or upon the guilt or innocence of the defendant." See *Ellis v. State*, 216 Ga. App. 232, 233 (453 SE2d 810) (1995); *Harris*, supra at 620.

4. Haralson also claims the trial court's failure to instruct the jury pursuant to the dictates of *Jacobson v. United States* violated his due process and fundamental fairness protections. Haralson submitted the following request to charge: "Where the State has induced a defendant to break the law and the defense of entrapment is at issue, the State must prove beyond a reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by agents of the State." *Jacobson*, 118 LE2d at 184.

The trial court refused to give the above charge, giving instead the pattern charge as follows: "A person is not guilty of a crime if by entrapment that person's conduct is induced or solicited by a government officer or employee or agent of either. . . . Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee or with an agent of either, and that officer or employee by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer or employee. To constitute entrapment the accused must have been induced to commit the criminal act which he would not have otherwise committed except by undue persuasion, incitement, or deceitful means practiced upon the accused by a government officer or employee, or agent of either."

Haralson argues that *Jacobson* mandates a jury instruction specifically stating that the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the criminal act *prior to first being approached by government agents*. See, e.g., *United States v. Reese*, 60 F3d 660, 664 (9th Cir. 1995). But, in a case almost directly on point, the Eleventh Circuit rejected this argument. In upholding the giving of the pattern jury instruction, the court held

that the phrase which "instructed the jury to acquit if the evidence 'leaves you with a reasonable doubt whether a defendant had any intent to commit the crimes *except for inducement or persuasion on the part of the Government officer or agent*,'" correctly stated the "but for" nature of the predisposition inquiry. (Emphasis in original.) *United States v. Brown*, 43 F3d 618, 628 (11th Cir. 1995). The pattern instruction given by the court in the instant case has similar "but for" language; namely, "[e]ntrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee or with an agent of either, and that officer or employee by undue persuasion, incitement, or deceitful means, *induced the accused to commit the act which the accused would not have committed except for the conduct of such officer or employee*." (Emphasis supplied.)

"It is a fundamental rule in Georgia that jury instructions must be read and considered as a whole in determining whether the charge contained error." (Punctuation omitted.) *Jordan v. State*, 211 Ga. App. 86, 93 (438 SE2d 371) (1993), quoting *Williams v. State*, 249 Ga. 822, 825 (295 SE2d 293) (1982). Therefore, considering the charge as a whole, we find it fully and accurately charged the jury on the State's burden when a defense of entrapment is raised. *Jordan*, supra at 93. Accordingly, we find no error in the trial court's refusal to give the specific requested charge because the charge that was given adequately covered the applicable principle of law. *McCane v. State*, 147 Ga. App. 730, 731 (250 SE2d 181) (1978); *Brown*, supra at 627-628.

5. Haralson also enumerates as error the trial court's refusal to allow character witness testimony as to Haralson's reputation in the business community. Although the trial court allowed testimony from two character witnesses as to Haralson's reputation for good character in the community, the court refused to allow testimony from four witnesses as to Haralson's reputation in the business community. There was no error. "[R]estricting counsel from asking a witness about an individual's reputation at business and among the employees is not error, as this is not the correct test." *Foster v. State*, 170 Ga. App. 222, 225 (316 SE2d 828) (1984); *Bush v. State*, 149 Ga. App. 448, 450 (254 SE2d 453) (1979).

6. In his next enumeration, Haralson claims the trial court erred when it refused to allow the testimony of Haralson's sister, Janet Davis. At trial, defense counsel requested permission to call Davis to testify about conversations she had with Debra Lane three weeks or a month before Lane first called Haralson. These conversations did not involve Haralson in any way but allegedly concerned attempts by Lane to convince Davis to arrange a marijuana deal. The trial court properly excluded this evidence on the grounds that it was not rele-

vant. "The trial court has wide discretion in determining what evidence is legally or logically relevant." *Lebis v. State*, 212 Ga. App. 481, 484 (442 SE2d 786) (1994). This enumeration of error is without merit.

7. Last, Haralson contends the trial court improperly denied his motion in limine to exclude the testimony of Denver Bowman about Haralson's prior use of marijuana. The testimony in question was elicited to rebut Haralson's entrapment defense and described instances when Bowman and Haralson were in high school and would go in together to buy an ounce or half an ounce of marijuana and divide it between themselves.

Haralson argues the prejudicial value of evidence of simple possession 12 to 13 years ago outweighs any probative value in this case and the court erred in admitting it. We do not agree. Evidence of Haralson's prior use and possession of marijuana is relevant to rebut his defense of entrapment. See *Hall v. State*, supra at 311 (testimony of defendant that he cooperated in drug sale because he would be able to keep some cocaine for his own use disclosed predisposition to sell drugs for drugs).

Haralson also claims the prior use and possession was too remote to be of any probative value. While lapse of time is a factor to be considered when balancing the probative value with the prejudicial impact of the evidence, mere lapse of time between the prior use and the current offense does not render the evidence inadmissible. *Williams v. State*, 194 Ga. App. 822, 823 (392 SE2d 297) (1990). We find the probative value of this evidence was not outweighed by the prejudicial impact. The trial court did not abuse its discretion in admitting this evidence.

*Judgment affirmed. Beasley, C. J., McMurray, P. J., Birdsong, P. J., Johnson, Smith and Ruffin, JJ., concur. Pope, P. J., and Blackburn, J., dissent.*

POPE, Presiding Judge, dissenting.

I respectfully dissent. OCGA § 16-3-25 provides that "[a] person is not guilty of a crime if, by entrapment, his conduct is induced or solicited by a government officer or employee, or agent of either, for the purpose of obtaining evidence to be used in prosecuting the person for commission of the crime. Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer." See also *Emanuel v. State*, 195 Ga. App. 302, 305 (393 SE2d 74) (1990) (Pope, J., dissenting), adopted in 260 Ga. 425 (396 SE2d 225) (1990). "After a defendant

presents a prima facie case of entrapment, the burden is on the state to disprove entrapment beyond a reasonable doubt." *Hill v. State*, 261 Ga. 377 (405 SE2d 258) (1991). And, as the majority acknowledges, it is not enough for the State merely to impeach the defendant's evidence making out the entrapment defense. Rather, "[t]he government's burden is far greater than merely impeaching the accused, it 'must go further and contradict this witness' testimony as to the affirmative defense. (Cits.)' [Cit.]" Id.

In my opinion the defendant in this case established a prima facie case of entrapment, and the State failed to rebut the defendant's case beyond a reasonable doubt. The defendant testified that the informant was an old female friend of his who repeatedly (forty or fifty times) contacted him over a two-month period and requested that he obtain marijuana to sell. She would sometimes call two or three times a day. The defendant testified that when the informant first contacted him, she told him that she needed to make some money because "her children were doing without"; that at first she did not say what she wanted to do to make money to help her kids, but that she subsequently asked him to help her obtain some marijuana to sell; and that when defendant still did not respond to her requests, she then told him that she feared for her safety because of her inability to obtain drugs on a previous occasion for the people who were looking to buy drugs from her now. The defendant presented evidence that he did not possess marijuana to sell at the time the informant contacted him, that he did not transport the contraband to the arranged buy, and that he told the undercover officer he had to "pound the pavement" to obtain the drugs through the friend of a friend. The informant did not testify at trial, and the undercover officer's testimony concerning his knowledge of what transpired in setting up the drug deal did not contradict the defendant's testimony. The undercover officer testified that the informant talked with the defendant an undetermined number of times over a period of several weeks in setting up the deal, that he did not tell the informant specifically what to say to the defendant in order to set up the deal, although he did instruct her to try and get "as much as she could get" and that he did not have a recording of the informant's conversations with the defendant. Based on the officer's testimony alone, the State could not rebut the defendant's claim of entrapment. " 'The record is absolutely devoid of evidence . . . that the circumstances surrounding the solicitations by the . . . informant occurred in a way other than that testified to by [the defendant].' [Cit.]" *Emanuel*, 195 Ga. App. at 305. "If the informer's testimony would have disproved the defendant's testimony, the state should have produced him." *Perry v. State*, 143 Ga. App. 227, 228 (1) (237 SE2d 705) (1977). See also *Hill v. State*, 261 Ga. at 378; *Robinson v. State*, 145 Ga. App.

17 (243 SE2d 257) (1978).

Notwithstanding the foregoing, however, the majority would affirm defendant's conviction because of evidence it says shows defendant's predisposition to commit the crime. Specifically, the majority finds that defendant's words and actions during the drug sale would allow the *inference* that defendant had prior experience in drug dealing. But "inferences and suggestion are not sufficient to meet the State's burden of showing '*beyond a reasonable doubt* that the [defendant was] predisposed to commit the [offense].' (Emphasis supplied.) [Cit.]" *Emanuel v. State*, 195 Ga. App. at 306. The State failed to show that the defendant possessed marijuana prior to the sale, had made drug sales on prior occasions, needed to transact the sale to get money, or any other facts that could create more than an inference of predisposition. See *Chambers v. State*, 154 Ga. App. 620, 625 (269 SE2d 42) (1980). All the State really showed about defendant's predisposition was that defendant possessed marijuana in high school. However, a State's witness testified that the defendant had *never distributed* marijuana. The defendant's *possession* of marijuana approximately 12 years ago when he was in high school does not show beyond a reasonable doubt that the defendant had the predisposition to commit the crime of which he was convicted — *possession with the intent to distribute. Emanuel*, 195 Ga. App. at 306.

Since the State failed to rebut defendant's testimony that he was entrapped and failed to present any more than an inference of the defendant's predisposition, the defendant was entitled to a directed verdict of acquittal. Compare *Rutledge v. State*, 218 Ga. App. 130, 133 (460 SE2d 551) (1995) (affirming conviction since informant testified that he did not induce defendant into committing the act); *Hall v. State*, 211 Ga. App. 310, 311 (439 SE2d 67) (1993) (affirming conviction since defendant testified he had sold drugs because he needed the money). Therefore, I would find it unnecessary to reach the defendant's remaining enumerations of error.

I am authorized to state that Judge Blackburn joins in this dissent.

DECIDED DECEMBER 4, 1996 — ■

*Frank J. Petrella*, for appellant.

*Daniel J. Porter, District Attorney, Jefferson B. Blandford, Assistant District Attorney*, for appellee.