A90A1145. HILL v. THE STATE.
(398 SE2d 226)

BEASLEY, Judge.

Hill was convicted of violating the Georgia Controlled Substances Act by unlawfully delivering cocaine and unlawfully selling and distributing and knowingly possessing 200 grams or more of cocaine or a mixture with 10 percent or more of cocaine. OCGA § 16-13-30 (b). At trial, Hill offered the defense of entrapment. He enumerates as error the denial of his motion for directed verdict of acquittal because there was an absence of any evidence that he had ever engaged in any misconduct of any kind prior to his being unduly induced to do so by the State's paid informant.

Citing *United States v. Luttrell*, 889 F2d 806 (9th Cir. 1989) and *United States v. Jacobson*, 893 F2d 999 (8th Cir. 1990), appellant urges that this Court adopt a rule that a defendant has established entrapment as a matter of law where the State puts up absolutely no evidence of predisposition and where there is no evidence that the defendant was the subject of suspicion based on any facts. However, a defendant's otherwise unrebutted claim of no previous criminal activity is not sufficient probative evidence of non-predisposition to engage in such activity. There is no requirement that predisposition include a factual showing that a defendant was suspect prior to commission of the criminal act at issue. See *Gray v. State,* 191 Ga. App. 135, 136 (2)

(381 SE2d 312) (1989). The rule proposed by appellant would automatically allow the entrapment defense to prevail for every first offense wherein law enforcement had any involvement in the transaction.

The law on establishing entrapment in this state is well-settled. "In Georgia, the entrapment defense consists of three distinct elements: (1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement or deceit; and (3) the defendant must not be predisposed to commit the crime. OCGA § 16-3-25 (enacted in 1968). [Cit.]" *Keaton v. State*, 253 Ga. 70, 71-72 (316 SE2d 452) (1984).

The evidence at appellant's trial construed so as to uphold the verdict, *Thomas v. State*, 175 Ga. App. 873, 874 (1) (334 SE2d 903) (1985), showed predisposition to commit the acts charged. Informant Reed repeatedly called Hill and ultimately arranged Hill's introduction to undercover agents with a regional narcotics squad. Reed had represented to Hill that he was wealthy and had influential contacts. Reed persuaded Hill to find a cocaine source. Hill refused at first, but after calls and visits from Reed, Hill found a source. At the request of an agent, Reed called Hill and asked for a cocaine sample. It was retrieved from Hill's place of employment within minutes.

Four days thereafter, Reed and two of the agents met with Hill at a restaurant to purchase cocaine. One agent was wearing a body transmitter. After entering the restaurant, the other agent walked over to Hill and asked him to step outside to the parking lot so the agent could show him something. For safety reasons, agents carried "surprise flash" money, $10,000 in cash to show Hill, who had not been told about the money. The agents knew that in negotiations to purchase large amounts of cocaine, the person they would negotiate with would want to see the money. The agents preferred to show it when the person was not expecting it, so that the person would not have time to set up a robbery. The agent showed Hill the $10,000 and told him it was $11,200. Hill showed no surprise. The agent then told Hill that he was just supposed to show Hill the money and that the agent did not know much about what was going on. He told Hill to talk to the other undercover agent, who was waiting in the restaurant.

Hill returned to the restaurant and sat down with the other agent. The agent who had shown the flash money left and went to a location to monitor the conversation. Reed also left.

The remaining agent asked Hill if the money looked okay and Hill indicated it looked fine. They discussed the purchase of eight ounces of cocaine. This agent had represented to Hill that he was a bodyguard for a Tennessee man, had flown in on a private jet, and was there to pick up the cocaine. Hill indicated the drugs were in his

car at a hotel, and he asked the agent to go with him for them. The agent refused and indicated he would call the deal off. He criticized Hill's way of doing business; he told Hill that if he could not even put together an eight-ounce deal without having to go somewhere else to get the drugs, then he questioned whether or not Hill could handle his business. Hill assured the agent he could handle everything and anything that was wanted, as much as a "couple or five kilos, multi-kilos."

Hill indicated the "turnaround" time for multi-kilos would be about a week to ten days and the agent would deal with Hill personally. He apologized for the inconvenience this time and indicated that there would not be this problem in the future; he could just fly in and pick up any drugs from Hill. The agent told Hill that in forty-five minutes he was leaving to go back to Tennessee but that he could be reached by beeper if Hill wanted to bring the cocaine to him. Hill called the agent within thirty minutes after the agent arrived at an undercover apartment and arranged to complete the transaction at the restaurant. When the agents arrived there, Hill was standing outside and told them to come to his car. The three got into the car and Hill asked them if the agents had the money. One agent told Hill the money was in their car but asked to see the drugs first. Hill said the drugs were in a sock on the floor under the seat. The other agent began to slowly unroll the sock. Hill reached over, took the sock from the agent, unrolled it, pulled out a clear plastic bag containing 224 grams of cocaine, and handed it to an agent.

"Where a defendant raises an affirmative defense and testifies to the same, the burden is on the State to disprove the defense beyond a reasonable doubt. [Cits.] Ordinarily, the determination of whether the State has met the burden rests with the jury. [OCGA § 17-9-3.] However, where there is no conflict in the evidence, and the evidence introduced, with all reasonable deductions and inferences therefrom, demands a verdict of acquittal, the trial court in a criminal case must direct a verdict of acquittal. [OCGA § 17-9-1]; [cit.]" *State v. Royal*, 247 Ga. 309 (1) (275 SE2d 646) (1981). This was not the situation in this case.

Hill maintains that the informant's undue persuasion included threats to his and his family's safety and that when he finally was persuaded to become part of the transaction, he was merely to arrange a meeting between his contact and the agent and then withdraw. First, unlike those cases where the identity of the informant is not disclosed, informant Reed testified. He admitted he had pursued Hill who eventually cooperated, but, much of the remainder of the informant's testimony conflicted with Hill's version of events. Reed testified he did not threaten any violence but kept pushing the power and money aspects of drug dealing. The informant thought Hill was

in over his head and that he was not a dealer even though Hill was pretending to be one.

Second, there was evidence that Hill became eager and willing to participate. "There is no entrapment where a defendant who is ready to commit the offense is merely furnished an opportunity. [Cit.] Even repeated requests and offers of money do not make out an entrapment situation as a matter of law. [Cits.]" *Paras v. State*, 247 Ga. 75, 77 (2) (274 SE2d 451) (1981). See *Pennyman v. State*, 175 Ga. App. 405 (333 SE2d 659) (1985).

Third, the evidence that Hill was able to produce a sample of cocaine within minutes of the informant's call, his announcement that he could handle large future drug deals, his lack of surprise at the flash money, and his rapid production of a substantial quantity of cocaine authorize a factfinder to infer that Hill was intimately familiar with drug deals and had a predisposition to commit the crimes charged.

Inasmuch as Hill's evidence negating his intent and predisposition to commit the charged crimes was not unrebutted, the issue of an entrapment defense was properly submitted to the jury. See *Bennett v. State*, 158 Ga. App. 421, 422 (1) (280 SE2d 429) (1981). It was within the jury's province to decide which witnesses to believe. Id.; see also *Pennyman*, supra at 407 (1) (a).

*Judgments affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED SEPTEMBER 27, 1990 —
REHEARING DENIED OCTOBER 15, 1990 —

*The Garland Firm, Edward T. M. Garland, Charles G. Haldi, Jr., Donald F. Samuel,* for appellant.

*Thomas J. Charron, District Attorney, W. Thomas Weathers III, Debra H. Bernes, Assistant District Attorneys,* for appellee.