### A97A1265. WILCOX v. THE STATE.
(493 SE2d 724)

SMITH, Judge.

Larry Wilcox was charged by accusation with the offense of possession of cocaine. After Wilcox was found guilty by a jury and his motion for new trial was denied, this appeal ensued. Wilcox contends that his motion for new trial was erroneously denied because the State failed to rebut his defense of entrapment and because the trial court erred in allowing the accusation to be amended during jury deliberations. We disagree with both contentions and affirm.

Construed in favor of the verdict, evidence was presented that on September 14, 1995, undercover officers set up a "reverse" drug operation at a residence where they had just executed a search warrant. These officers posed as drug dealers selling crack cocaine. The State presented evidence that sometime around dark, Wilcox approached the residence looking for a person named Stacy Matthews.[1] Wilcox stated that he had arrived at the residence because Matthews wanted to purchase Wilcox's car. Officer Thomas told Wilcox that Matthews was not there, and on Thomas's inquiry, Wilcox stated that he would sell the car for $500. Thomas testified that he told Wilcox that the car was not worth that amount and that he "jokingly" said to Wilcox that he would give him ten "rocks" for it. According to Thomas, Wilcox replied that he would not sell the car for ten rocks, but that he would sell it for twenty rocks, which was equivalent to $200 worth of crack cocaine. Wilcox did not make the "sale"; however, he left the residence because he wanted to give Matthews the first opportunity to purchase the car. He was told to return later.

Wilcox did return for a second time that evening, again looking for Matthews. Thomas told Wilcox that Matthews was not present and to go clean out the car and return with the title. Wilcox left and returned for the third time around 11:00 p.m. Thomas and another officer walked toward Wilcox's car and asked whether he was "ready to do the deal." At about the same time, Matthews approached, and Wilcox asked him whether he was "ready to do this." Matthews walked away and replied that he did not know what Wilcox was talking about. Matthews also told Wilcox, in response to Wilcox's statement that Matthews was "supposed to do the deal," that Wilcox had to "deal with" the officers. After Matthews walked away Wilcox stated that he did not want to trade his car but that he did want to buy a piece of crack cocaine for $5. The officers acted as if they did not want to sell a $10 cocaine piece for $5, but Wilcox persisted in his efforts to buy the cocaine for that amount. The officers eventually agreed to sell a piece to Wilcox for $5. Wilcox handed Thomas $5, and Wilcox held out his hand and took possession of a piece of cocaine from another undercover officer. Wilcox was then arrested. The evidence presented by the State was that Wilcox was not threatened or forced at any time during the course of the evening by the officers but that he participated freely and voluntarily in the transaction.

Wilcox testified that he intended to sell his car to Matthews. He stated that when he arrived the first time at the residence, Thomas told him that Matthews was not present and to return in 30 minutes.

---

[1] The record does not indicate that Matthews was involved in the undercover operation. The residence from which the officers operated belonged to Matthews's sister.

On this first visit, according to Wilcox, Thomas did not mention selling the car for drugs. Wilcox testified that he returned a short time later, that Thomas asked him whether he would sell his car for cocaine, and that he replied he would not because he wanted money for his car. He stated that Thomas again told him to return in 30 minutes and said Matthews would be present. Wilcox returned for the third time and saw Matthews, who stated that he did not want to purchase the car. Wilcox stated that he attempted to back out of the yard but that Thomas told him to come and talk to him. According to Wilcox, Thomas asked him how much money he had, and he replied that he had no money but that he ran his "hand in [his] pocket" and it came out with $5 in it. Wilcox stated that Thomas reached over and took the $5 out of his hand without his permission and that cocaine was not mentioned at the time. According to Wilcox, Thomas then indicated to Wilcox to follow him toward the house and that two or three other men appeared. Wilcox stated that he did as directed by Thomas, and that he opened his hand "like I was going to get my $5 back," and that one of the men "put the thing in my hand" and grabbed him.

1. Wilcox first argues that the evidence showed a prima facie case of entrapment, which the State failed to rebut. We disagree.

Three elements comprise the defense of entrapment: "(1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defendant must not be predisposed to commit the crime. [Cits.]" *Keaton v. State*, 253 Ga. 70, 72 (316 SE2d 452) (1984); OCGA § 16-3-25. The defendant's lack of predisposition is the key element of the defense. *Keaton* at 72. When a defendant raises this defense and testifies to it at trial, it is the State's burden to disprove the defense beyond a reasonable doubt. *State v. Royal*, 247 Ga. 309, 310 (275 SE2d 646) (1981). Usually, "the determination of whether the State has met its burden rests with the jury. [Cit.] However, where there is no conflict in the evidence, and the evidence introduced, with all reasonable deductions and inferences therefrom, demands a verdict of acquittal, the trial court . . . must direct a verdict of acquittal. [Cits.]" Id. at 309-310. "The government's burden is far greater than merely impeaching the accused, it must go further and contradict this witness' testimony as to the affirmative defense." (Punctuation omitted.) *Hill v. State*, 261 Ga. 377 (405 SE2d 258) (1991).

It is questionable whether Wilcox's testimony even raised a prima facie case of entrapment. He stated that he did not purchase cocaine; he testified that his money was taken from him and cocaine was placed in his hand without his consent. But even assuming that his testimony and the testimony presented by the State did indicate

entrapment, this evidence did not *demand* a finding that Wilcox was entrapped. "A distinction must be made between evidence which *raises* a defense of entrapment and which would require that the jury be charged as to the law of entrapment and the burden of proof thereon, and evidence which . . . would *demand* a finding of entrapment and, therefore, a directed verdict of acquittal." (Footnote omitted; emphasis in original.) *Royal*, supra at 310.

Here, it is true the State's evidence showed that the idea to sell cocaine to unwitting customers originated with the State. But Thomas's request that Wilcox sell his car for cocaine, without more, is not necessarily indicative of "undue persuasion." Entrapment does not occur when an officer or agent "merely furnishes an opportunity to a defendant who is ready to commit the offense." (Citations and punctuation omitted.) *Evans v. State*, 209 Ga. App. 340, 341 (433 SE2d 426) (1993). Even without considering the State's evidence that Wilcox immediately began bargaining when Thomas offered to buy the car for "ten rocks," the State's evidence also showed that after he renounced his desire to sell his car to the officer, Wilcox himself indicated that he wished to initiate a different transaction and purchase cocaine for $5. And when the officers acted as if they did not wish to sell cocaine for this amount, Wilcox persisted in his effort to purchase cocaine. Evidence therefore was presented showing that Wilcox was willing and ready to purchase cocaine.

As for the key element of "predisposition," Wilcox stated that he was not a "rock" smoker and that he did not go to the residence to purchase a rock but instead to sell his car. We recognize that the State did not present any direct evidence in response to this statement. But this does not automatically mean that Wilcox was entitled to a directed verdict. Evidence *was* introduced that Wilcox had knowledge of the value of a "rock" of cocaine, as shown by his negotiations with Thomas. In addition, predisposition may be shown by the ready commission of a criminal act. As discussed above, although Wilcox indicated he did not wish to sell his car, he did indicate his desire to purchase cocaine. He readily purchased the cocaine, and this, along with his conversation with Thomas, was sufficient to submit the issue of predisposition to the jury and to authorize a rational trier of fact to determine that entrapment had not occurred. See *Haralson v. State*, 223 Ga. App. 787, 789-790 (1) (479 SE2d 115) (1996). See also *Jackson v. State*, 206 Ga. App. 98 (424 SE2d 83) (1992) (evidence, when viewed in totality, sufficient to show appellant's predisposition to commit criminal act).

We note Wilcox's reliance on *Hill v. State*, supra. He argues that the State erroneously relied on the "ongoing deception" of Thomas's offers to purchase his car in exchange for cocaine to show his predisposition to commit the crime. *Hill* does state that "[i]f the creative

activity of the law-enforcement official generates criminal acts that are not independent acts subsequent to the inducement but part of a course of conduct which was the product of the inducement, those criminal acts cannot be used to show predisposition. If those acts could be used to show predisposition, the entrapment defense would be worthless." (Citations and punctuation omitted.) Id. at 377. But *Hill* is distinguished from this case on its facts. The police officers in that case used an elaborate scheme to persuade Hill to participate in a cocaine deal. *Hill v. State*, 197 Ga. App. 260, 261 (398 SE2d 226) (1990). In fact, Hill did not wish to participate in the transaction but was persuaded to do so following "calls and visits" from the police informant. Id. at 261. Here, despite evidence concerning the car negotiations, evidence was presented that it was *Wilcox's* idea to make the cocaine purchase, and the jury could have reasonably inferred that the officer merely provided him with the opportunity to commit the offense. The jury was authorized to conclude that this was an "independent act" and did not constitute entrapment. See, e.g., *Mason v. State*, 194 Ga. App. 152, 153 (390 SE2d 246) (1990).[2]

In summary, this case presented factual issues as to entrapment for the jury's determination. When all the evidence was considered, it certainly did not demand a finding of entrapment. *Venable v. State*, 203 Ga. App. 517, 518 (3) (417 SE2d 347) (1992). See also *Royal*, supra at 311-312. Whether Wilcox was predisposed to possess cocaine and whether the officers used "undue persuasion" were issues for the jury to decide. The jury was appropriately charged on the law of entrapment, and it returned a guilty verdict against Wilcox, a verdict that was authorized under the evidence presented. The trial court therefore did not err in denying Wilcox's motion for new trial based upon his entrapment defense.

2. Wilcox also contends the trial court erroneously amended the accusation during jury deliberations. In response to a question by the jury, the court amended an error in the affidavit which listed the offense date as September 14, 1994 instead of 1995. Wilcox's counsel objected without explanation to the amendment.

"An accused is entitled to an indictment or accusation perfect in form as well as substance *if he timely raises the question in writing* on special demurrer. [Cits.]" (Emphasis supplied.) *King v. State*, 176 Ga. App. 137, 139 (2) (335 SE2d 439) (1985), overruled on other grounds, *Copeland v. White*, 178 Ga. App. 644 (344 SE2d 436) (1986). But here, Wilcox's counsel never objected to the error until it was

---

[2] We note Wilcox's testimony that he would not have returned to the residence if the officers had told him that Matthews would not return. There is no indication in the record, however, that any statements by the officers concerning Matthews's return were untrue. In fact, he did return to the residence.

brought to his attention by the jury. His objection was not timely.

Moreover, even if the trial court committed error by amending the affidavit, the record does not show that Wilcox was prejudiced by the amendment. See *King*, supra at 139. The accusation charged Wilcox with "unlawfully possess[ing] and hav[ing] under his control, cocaine, a controlled substance in Schedule II of the Georgia Controlled Substances Act." Although the date may have been incorrect on the accusation, it does not appear that Wilcox relied on that date in preparing his defense or that it otherwise misled him. The evidence was undisputed that the offense occurred in September 1995, and Wilcox even submitted his own evidence concerning the events of that date. Wilcox has shown no prejudice due to the incorrect date.

*Guess v. State*, 155 Ga. App. 14 (270 SE2d 255) (1980), relied on by Wilcox, is distinguished from this case. In *Guess*, the affidavit on which the accusation was based was unsworn when filed. The jurat was added after defendant's first trial. Stating the rule that "[a]ccusations are amendable to the time that issue is joined," id., this Court overturned defendant's conviction. Wilcox, however, did not timely move for correction of any error in the affidavit. More significantly, the error in *Guess* was one of substance. The accusation was not properly sworn before trial. Here, the exact date of the offense was not material; OCGA § 16-13-30 makes it unlawful for a person to purchase, possess, or control cocaine. Wilcox was sufficiently notified of the charges against him, and as discussed above, he presented evidence on his own behalf concerning the correct date. The trial court consequently did not err in refusing to grant a new trial on this ground.

*Judgment affirmed. Beasley, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED NOVEMBER 6, 1997.

*Leighton R. Berry, Jr.*, for appellant.
*Charles H. Weston, District Attorney, Kimberly S. Schwartz, Assistant District Attorney*, for appellee.