## A01A1026. WILEY v. THE STATE.
(552 SE2d 906)

RUFFIN, Judge.

A jury found Timothy Wiley guilty of attempted murder and theft by taking.[1] On appeal, Wiley contends that the State failed to disprove his entrapment defense beyond a reasonable doubt. Wiley also contends that the trial court erred in charging the jury. These contentions lack merit, and we affirm Wiley's convictions. We nonetheless remand the case to the trial court so that Wiley may pursue

---

[1] Although Wiley was also charged with criminal solicitation for soliciting the aid of another in committing the crime, the jury was unable to reach a verdict on this count, and the trial court declared a mistrial as to that charge.

his claim that he received ineffective assistance of counsel.

Viewed in a light most favorable to the jury's verdict,[2] the evidence shows that Wiley worked at the distribution center for Sunglass Hut International. Sunglass Hut had experienced problems with thefts at the center, and the company retained Wells Fargo to investigate. Kenneth Lewis, an investigator for Wells Fargo, posed as an employee. As part of his investigation, Lewis befriended Wiley, who was a suspect in the thefts. According to Lewis, if an employee brought up the subject of theft, Lewis would "expand on [the subject] and say that [he] knew people that would pay for [the sunglasses]." At some point, Lewis spoke with Wiley about taking sunglasses from the facility, and Wiley indicated that he could "fill" Lewis' orders. On July 27, 1997, Lewis gave Wiley $1,000 for a case of sunglasses, which the State alleges that Wiley stole from Sunglass Hut.

Meanwhile, on July 15, 1997, while Lewis was befriending Wiley, the two went to lunch, and Wiley showed Lewis bruises on his arms and legs, which Wiley attributed to an altercation with "his wife's boyfriend." According to Lewis, Wiley expressed "hatred" for the boyfriend and said that he would pay $1,000 to have him killed. Initially, Lewis did not take Wiley's statement seriously. However, on July 20, 1997, Wiley told Lewis again that "he was still having problems with [the boyfriend] and he was still looking for . . . a hit man." Lewis asked Wiley if "he was sure this is what he wanted," and Wiley responded by saying he was "dead serious." Lewis told Wiley that he "would look into it."

On July 21, 1997, Wiley asked "if [Lewis] could get someone from New York, a connection, to make the hit for him," saying that he would pay for the airplane ticket. Lewis again told Wiley that he would look into the situation, and Wiley asked Lewis "to page him or call him directly, as soon as [Lewis] talked to the hit man to find out if the hit can be done."

The next day, Wiley approached Lewis and told him that the hit needed to take place by the next Sunday because Wiley's wife was moving away with the boyfriend. Wiley provided the intended victim's name and drew Lewis a map of where the hit should take place. According to Lewis, Wiley told him "exactly how he wanted the hit done. . . . He told me that he wanted the killer to approach the victim in the parking lot and walk up to him screaming obscenities and to tell [the victim], 'Where's my cocaine? I told you I would find you.'" Wiley further instructed Lewis that he wanted the killer to shoot the victim twice in the head.

Wiley continued to ask Lewis about arranging a hit, and Lewis

---

[2] See *Wright v. State*, 232 Ga. App. 104 (1) (501 SE2d 543) (1998).

relayed this information to his supervisor at Wells Fargo. The information was subsequently given to the Henry County Police Department, which began to investigate the murder for hire plot. Once the police were involved, Lewis told Wiley that the hit man was scheduled to arrive on either July 29 or July 30.

On July 30, 1997, Lewis called Wiley from the police department, purportedly to arrange a meeting between Wiley and the hit man. Lewis and Willie Rosser, a police officer posing as the hit man, then drove Lewis' car to a hotel to meet Wiley. Although Wiley did not have the $1,000 to pay for the murder, Rosser agreed to accept $300 and a case of sunglasses, which Wiley gave him. Wiley was subsequently arrested and charged with criminal attempt to commit murder and theft by taking.

During the trial, Wiley testified on his own behalf. Not surprisingly, his testimony differed substantially from that of Lewis. According to Wiley, Lewis "had came [sic] to me and two other employees and he was asking for us to help him take some sunglasses out of Sunglass Hut." Wiley testified that, although he told Lewis that he did not know how to get sunglasses out of the facility, Lewis continued to broach the subject. Eventually, Lewis told Wiley that he, Lewis, would take the sunglasses out of the distribution center, and he asked Wiley to retrieve the box of glasses and take it to a local gas station, which Wiley finally agreed to do in exchange for $1,000.

With respect to the murder for hire plot, Wiley testified that he had been attacked by a man who "was trying to seduce [his] wife." According to Wiley, after he told Lewis what had happened, Lewis said, " 'if you won't do nothing [sic] about it, then I will. . . . [Y]ou can't keep letting this guy run over you. If you don't do something, he's going to kill you, and you'd better kill him before he kills you.' " Lewis then volunteered that he had a friend who would "take care" of Wiley's attacker. Wiley further testified that he was unaware he was meeting Rosser to discuss the murder for hire plot and that the only reason he gave him the money and the sunglasses — which were the ones he contended that Lewis actually removed from the warehouse — was because he did not know what Rosser "was capable of doing."

The jury evidently disbelieved Wiley's testimony, and he was convicted of criminal attempt to commit murder and theft by taking.

1. In his first enumeration of error, Wiley contends that his convictions must be reversed because the State failed to rebut his prima facie case of entrapment. The affirmative defense of entrapment has three elements: "(1) the idea for the commission of the crime must originate with the state agent; (2) the crime must be induced by the agent's undue persuasion, incitement, or deceit; and (3) the defend-

ant must not be predisposed to commit the crime."[3] If a defendant presents a prima facie case of entrapment, then the State must disprove entrapment beyond a reasonable doubt.[4] Whether the State has met this burden is generally a question for the jury.[5]

Initially, we question whether the evidence presents a prima facie case of entrapment, as Wiley's own testimony arguably precludes him from asserting this defense. As a general rule, the defense of entrapment requires that a defendant admit the commission of the crime, but assert that the commission was the result of unlawful solicitation or inducement by a law enforcement agent.[6] Here, Wiley testified that he "never took anything from Sunglass Hut."[7] Wiley also testified that he never agreed to pay Rosser to murder his assailant. Thus, Wiley's true defense was to deny committing the crimes with which he had been charged.[8]

Furthermore, to the extent that the evidence raised the defense of entrapment, the jury was authorized to conclude that the State rebutted this defense beyond a reasonable doubt. "Entrapment does not occur when an officer or agent merely furnishes an opportunity to a defendant who is ready to commit the offense."[9] Here, Lewis testified that the idea to hire a hit man originated with Wiley. Also, Lewis testified that Wiley was responsible for taking the sunglasses from Sunglass Hut. Although Wiley's testimony contradicted Lewis', the jury was not required to believe Wiley.[10] Accordingly, the jury was authorized to conclude that Wiley was not entrapped.[11]

2. In his second enumeration of error Wiley contends that the trial court erred in recharging the jury on entrapment. In response to a juror's request, the trial court gave the entrapment charge a second

---

[3] (Punctuation omitted.) *Hill v. State*, 261 Ga. 377 (405 SE2d 258) (1991). See also OCGA § 16-3-25.

[4] See *Hill*, supra.

[5] Id.

[6] See *Hinton v. State*, 236 Ga. App. 140, 142 (511 SE2d 547) (1999).

[7] Wiley admitted to taking a case of sunglasses to a gas station after Lewis allegedly removed the case from the warehouse. Thus, assuming that Lewis can be considered a government agent, Wiley arguably established a prima facie case of entrapment with respect to the theft of this case of sunglasses. We note, however, that the evidence showed that Wiley took another case of sunglasses. According to Lewis, on July 27, 1997, Wiley sold him a case of sunglasses for $1,000, which Lewis then turned over to his supervisor. As Wiley denied stealing "anything" from Sunglass Hut, he denied taking this case of sunglasses. It follows that he failed to establish a prima facie case of entrapment. Id.

[8] See id.

[9] (Punctuation omitted.) *Wilcox v. State*, 229 Ga. App. 227, 230 (1) (493 SE2d 724) (1997).

[10] See *Bennett v. State*, 228 Ga. App. 254 (1) (491 SE2d 481) (1997) ("[t]he issue of which version of . . . events to believe was for the jury"); see also *Finley v. State*, 214 Ga. App. 452, 454 (1) (448 SE2d 78) (1994) (where evidence does not demand a finding of entrapment, it remains a jury issue).

[11] *Wilcox*, supra at 231.

time, but told jurors that this defense "would not have any application to" the theft by taking charge. However, as Wiley's true defense was to deny committing the crimes, he was not entitled to a charge on entrapment.[12] Moreover, Wiley failed to object to the recharge, and "[b]y failing to object or reserve his right to later make exceptions in response to the trial court's inquiry regarding the recharge, [Wiley] waived his right to seek appellate review of the recharge."[13] It follows that this claim of error presents no basis for reversal.[14]

3. In his third and final enumeration of error, Wiley contends that he received ineffective assistance of trial counsel. As Wiley's trial attorney represented him during his motion for new trial, this argument has not been raised before the trial court. Accordingly, this appeal represents Wiley's first opportunity to address this contention. "Generally, when the appeal presents the first opportunity to raise an ineffective assistance claim, we remand the case to the trial court for an evidentiary hearing on the issue."[15] As this is Wiley's first opportunity to raise this argument, we remand the case to the trial court for a hearing and determination on the ineffective assistance claim.[16]

*Judgment affirmed and case remanded. Johnson, P. J., and Ellington, J., concur.*

DECIDED JULY 25, 2001.

*Webb, Stuckey & Lindsey, Martin C. Jones*, for appellant.
*Tommy K. Floyd, District Attorney, Sandra A. Graves, Assistant District Attorney*, for appellee.

---

[12] *Hinton,* supra.
[13] *Woods v. State,* 224 Ga. App. 52, 57 (9) (479 SE2d 414) (1996).
[14] See *Holder v. State,* 242 Ga. App. 479, 482-483 (6) (529 SE2d 907) (2000).
[15] *Shorter v. State,* 239 Ga. App. 625 (1) (521 SE2d 684) (1999).
[16] See *Hampton v. State,* 272 Ga. 284, 288 (9) (527 SE2d 872) (2000).