**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 14, 2018**

# In the Court of Appeals of Georgia

A18A0206. WILLIAMS v. THE STATE.

PHIPPS, Senior Appellate Judge.

A jury convicted Michael Jerome Williams of aggravated assault based on family violence and possession of a knife during the commission of a felony. On appeal, Williams argues that the trial court erred in denying his motion for a directed verdict because the evidence was insufficient to support his convictions. He also complains of a jury instruction, contends that the trial court erred in not allowing the voir dire of a child witness before his testimony, and claims ineffective assistance of trial counsel. Upon review, we find no error, but we vacate Williams's convictions and remand the case for an evidentiary hearing on Williams's ineffective assistance claims.

On appeal, the standard of review for denial of a motion for directed verdict is the same as that for determining the sufficiency of the evidence to support a conviction. The issue is whether, based on the evidence presented, a rational finder of fact could have found the accused guilty of the charged offenses beyond a reasonable doubt. Leaving the resolution of conflicting or contradictory testimony and the credibility of the witnesses to the jury, we construe the evidence in favor of the jury's verdicts.

*Luy v. State*, 303 Ga. App. 613, 613 (694 SE2d 370) (2010) (citation and punctuation omitted).

So viewed, the evidence shows that on July 14, 2016, Williams engaged in a verbal argument with Veela Hughes, the mother of his three children, at Hughes's home. As the argument escalated, Williams's and Hughes's teenage son took his two younger siblings to their grandparents' house next door. The son then returned to the house and started arguing with Williams. In the midst of the argument, the son went into his bedroom in order to put on his shoes and go back to his grandparents' house. Hughes testified that she saw Williams put on his black work gloves, go into the kitchen and grab a white- handled knife from the knife block, and then enter the son's room. Hughes grabbed her cell phone to call 911 and when she entered the son's room, she saw Williams standing over the son and stabbing him. The victim, in turn,

described that while he was in his room trying to get his shoes on, Williams entered his bedroom with his gloves on and holding a knife with a white handle. As the victim was bent over attempting to put on his shoes, Williams entered the room with the knife and started "going at it" with the knife. The victim then "picked [Williams] up and . . . slammed him onto the bed." As the victim and Williams wrestled on the bed, the victim sustained injuries to his head, shoulder, and forearm. Williams retreated when he heard Hughes on the phone with the 911 dispatcher. Hughes and the victim then walked over to his grandparents' house, leaving Williams alone in the house. The victim admitted to wanting to retrieve a shot gun located in his grandparents' house so that he could "[e]nd it" with Williams. Due to a loss of blood from his injuries, however, the victim collapsed on the ground, lost consciousness, and was later transported to the hospital. At trial, Hughes and Williams's ten-year-old son testified that a week before the July 14 incident, he saw Williams pull a knife on the ten-year-old's brother.

Deputy John Harvey, the first officer on the scene, made contact with Williams, who was still inside Hughes's residence within several minutes after Hughes's 911 call. Williams told Deputy Harvey that he did not stab or cut the victim. Deputy Harvey testified that he did not locate a weapon at the scene or collect blood

3

evidence, but he followed protocol in preserving the scene for the investigators. Investigator Linda Pritchett stated that upon arrival at the residence, she located two white-handled knifes in the knife block in the kitchen, but they appeared clean. The knives tested negative for blood in tests conducted by the Georgia Bureau of Investigation. During his interview with Investigator Pritchett, Williams admitted to putting on his black work gloves during his argument with the victim in order to get "a better grip" because he had limited use of his left hand. Dr. Kenneth Benjamin, the treating physician at the emergency room testified that the victim's injuries and blood loss were consistent with a stabbing.

Based on the foregoing, a jury found Williams guilty of aggravated assault based on family violence and possession of a knife during the commission of a felony, and he was convicted. Trial counsel filed a timely notice of appeal from this judgment.

1. On appeal, Williams first contends the trial court erred in denying his motion for a directed verdict because the evidence was insufficient to support his convictions. The crux of Williams's argument is that based on the absence of blood evidence on the knives located at the scene, the trial court should have granted his

motion for a directed verdict because there was insufficient evidence to show that he utilized a knife during the alleged assault. We disagree.

"A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" OCGA § 16-5-21 (a) (2). A person commits the offense of possession of a knife during the commission of a felony when he has on or within arm's reach of his person a knife having a blade three inches or longer during an armed robbery. See OCGA § 16-11-106 (b) (1).

As we have explained, "[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence." *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) (punctuation and citation omitted). Here, the jury found the victim and his description of the events to be credible when it found Williams guilty of the charged offenses. Both the victim and Hughes testified that Williams entered the victim's bedroom with a knife and that the victim suffered lacerations to his arm and head that required his hospitalization. In this case, either the victim's or Hughes's testimony, standing alone, was sufficient to sustain Williams's convictions as alleged in the indictment. See OCGA § 24-14-8 ("The

5

testimony of a single witness is generally sufficient to establish a fact.”); *Lomax v. State*, 319 Ga. App. 693, 694 (1) (738 SE2d 152) (2013) (noting that “the testimony of the victim, standing alone, was sufficient to sustain the conviction” for aggravated assault). See also *Hartley v. State*, 299 Ga. App. 534, 534-535, 537 (1) (683 SE2d 109) (2009) (affirming aggravated assault conviction where defendant brandished butcher knife in front of victim); *Harris v. State*, 233 Ga. App. 696, 697 (1) (505 SE2d 239) (1998) (affirming aggravated assault conviction where defendant wounded victim in mouth with knife).

Contrary to Williams's contention, the evidence described above was sufficient to enable a rational jury to conclude beyond a reasonable doubt that Williams was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307, 324-325 (IV) (99 SCt. 2781, 61 LEd2d 560) (1979).

2. Next, there is no merit to Williams's contention that it was error for the trial court to give the pattern jury instruction on the State's burden of proof as it relates to reasonable doubt.[1] The pattern charge's mention of jurors' “discovery of truth” does

---

[1] The portion of the court's charge at issue is as follows:
Ladies and gentlemen, the object of this trial is to discover the truth. During the trial, the admission of evidence will be governed by certain rules of evidence. Those rules were drafted with one prominent purpose

6

not, as Williams urges, dilute or cause confusion over the State's burden of proof and the role of the jury by suggesting that the jurors embark on their own "intuitive search for [the] truth." In criminal cases, the factfinder does have the task of seeking the truth. See *Sherrod v. State*, 280 Ga. 275, 276 (627 SE2d 36) (2006). But the jury is to determine the truth in view of the evidence, considered in light of the court's instructions. *Mayfield v. State*, 276 Ga. 324, 331 (2) (b) (578 SE2d 438) (2003). Here, the court's instruction properly focused the jurors on their consideration of the truth as proven by the evidence presented at trial.

3. Williams also argues that the trial court erred in denying his request to voir dire a child witness before his testimony. At trial, Williams's minor son testified that one week prior to the July 14 incident, he witnessed his father pull a knife on his brother. Prior to the introduction of this testimony, Williams asked to examine the child outside of the presence of the jury to ascertain whether his testimony constituted bad-character hearsay evidence. Specifically, Williams asserted that "everything the child said was either what he heard from someone else or it's impermissible from,

in mind and that purpose is the discovery of truth.

7

basically, what he's going to say about the situation, it's not relevant. It goes to bad character and that's it." The trial court denied Williams's request and instructed him to make any necessary objections during the child's testimony. Williams contends that he suffered prejudicial harm to his self-defense theory based on the introduction of the child's testimony.

We have held that the State may show that an indicted act constitutes a criminal act by showing a past pattern of prior difficulties between the accused and the alleged victim. *Lopez v. State*, 332 Ga. App. 518, 520 (2) (773 SE2d 787) (2015). See also *Benton v. State*, 256 Ga. App. 620, 622 (1) (568 SE2d 770) (2002) ("Given that [the defendant] engaged for several years in a consistent pattern of abuse and harassment against his daughter, a rational trier of fact could find that his surveillance of her on the incident date evidenced yet another abusive, harassing act."); OCGA § 24-4-404 (b) ("Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove . . . prior difficulties between the accused and the alleged victim."). Contrary to Williams's argument, the child's testimony was not introduced as evidence of prior bad acts by Williams against third parties. Rather, the testimony constituted evidence of prior difficulties between Williams and the victim based on the child's first-hand account. See *Lopez*, 332 Ga. App. at 521 (2) ("[e]vidence that

8

is otherwise relevant or material to the issues in a criminal case does not become inadmissible simply because it concerns separate offenses, or because it incidentally puts a criminal defendant's character or reputation in evidence.") (citation omitted). Consequently, this claim of error is without merit.

4. Williams also asserts that his trial counsel was ineffective because counsel (1) did not fully emphasize that Williams had limited use of his left hand, (2) never employed an expert to discuss the lack of blood spatter on the two knives found in the house, (3) failed to file a motion in limine to keep out alleged prior bad acts witnessed by Williams's minor son, and (4) did not utilize specific witnesses in Williams's defense. Williams, represented by appellate counsel, previously moved this court to remand the appeal to the trial court for the purpose of addressing his claims of ineffective assistance of trial counsel. We denied the motion to remand on September 20, 2017, relying on appellate counsel's representation that Williams had filed a pro se notice of appeal on March 13, 2017. We concluded that because Williams failed to raise his claims of ineffective assistance at the first available opportunity, he had therefore waived these claims. See *Carter v. State*, 275 Ga. App. 846, 847 (2) (622 SE2d 60) (2005) (where defendant assumed responsibility for his own appeal by

filing a notice of appeal instead of a motion for new trial, which could have included a claim for ineffective assistance of counsel, defendant waived that issue).

Upon closer inspection of the record, however, we now vacate our September 20, 2017 order denying Williams's motion to remand. In this case, Williams's trial counsel filed a notice of appeal on March 14, 2017.[2] As such, this appeal represents Williams's first opportunity to raise his ineffective assistance claims. See *Williams v. Moody*, 287 Ga. 665, 666 (1) (697 SE2d 199) (2010) ("The pre-appeal opportunity is 'available' when the convicted defendant is no longer represented by the attorney who represented him at trial."); *Carter*, 275 Ga. App. at 847 (2) ("[B]ecause Carter assumed responsibility for his own appeal, he is in the same position as new counsel, and he was required to raised the ineffectiveness of his trial defense counsel at his first opportunity.").

---

[2] The appellate record contains no pro se notice of appeal filed by Williams in the trial court. In any event, any such pro se notice of appeal would be a legal nullity because there is no indication that trial counsel had been relieved of his duty of representation. See *Soberanis v. State*, No. A17A1578, 2018 WL 1465423, at *2 (Ga. Ct. App., Mar. 26, 2018) (a pro se notice of appeal was a legal nullity and due to be dismissed because the defendant "filed his notice of appeal within the term of court in which judgment was entered, and the record does not show that his trial counsel had been formally permitted to withdraw.").

"Generally, when the appeal presents the first opportunity to raise an ineffective assistance claim, we remand the case to the trial court for an evidentiary hearing on the issue." *Wiley v. State*, 250 Ga. App. 731, 735 (3) (552 SE2d 906) (2001) (footnote omitted). Moreover, after reviewing the arguments urged in Wiliams's brief, we find that Williams's ineffective assistance claims are not ones that can be decided as a matter of law on the existing record. See *Mallon v. State*, 253 Ga. App. 51, 54 (5) (557 SE2d 409) (2001).

Accordingly, we vacate Williams's convictions and remand this case to the trial court for an evidentiary hearing and determination on Williams's ineffective assistance claims. If the trial court concludes that trial counsel was ineffective, Williams is entitled to a new trial. On the other hand, if the trial court finds that Williams received effective assistance, the trial court may reenter his convictions, and Williams "shall have 30 days in which to initiate an appeal of the trial court's ruling on the issue." *Mallon*, 253 Ga. App. at 54-55 (5).

*Judgment vacated and case remanded with direction. Ellington, P.J., and Bethel, J., concur.*